IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAHIL SAHIL,

    Petitioner,

v.                                                                              No. 2:26-cv-00434-DHU-JFR

MARY DE ANDA-YBARRA, Director of
Enforcement and Removal Operations, El
Paso Field Office; TODD LYONS, Acting
Director, Immigration and Customs Enforcement;
KRISTI NOEM, Secretary, U.S. Department of
Homeland Security; PAMELA BONDI, U.S.
Attorney General,

    Respondents.

**ORDER GRANTING PETITIONER'S MOTION
FOR A TEMPORARY RESTRAINING ORDER**

    THIS MATTER is before the Court on Petitioner's Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. Doc. 5. For the reasons set forth below, Petitioner's request for a temporary restraining order is **GRANTED**.

**I.
PROCEDURAL BACKGROUND**

    Petitioner was detained by immigration officials over two years after being released on his own recognizance under 8 U.S.C. § 1226. Doc. 2 at ¶ 68; *see also* Doc. 5-2 at 9.

    On February 19, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") with this Court. In the Petition, Petitioner seeks immediate release from immigration custody, alleging that the Government is detaining him unlawfully in violation of his substantive and procedural due process rights and the Immigration and Nationality Act ("INA"). Doc. 2 at ¶¶ 89-104. Specifically, Petitioner asserts that his detention bears no reasonable relation to any legitimate

1

government purpose. *Id.* at ¶ 93. He argues that the Due Process Clause entitles him to notice and a pre-deprivation hearing before the Government can re-detain him after his prior release. *Id.* at ¶¶ 95-98. Petitioner also alleges Respondents are wrongfully detaining him under 8 U.S.C. § 1225(b), when in fact he is properly subject to the discretionary detention provisions of 8 U.S.C. § 1226(a). *Id.* at ¶¶ 100-101.

Respondents were served with the Petition on February 19, 2026, Doc. 3, and on February 20, 2026, this Court ordered the Government to show cause why the Petition should not be granted within ten business days of service, Doc. 4.

On February 24, 2026, Petitioner filed the present Motion for Temporary Restraining Order and Preliminary Injunction, seeking immediate release from detention to alleviate the harm he faces due to his allegedly unlawful detention. Doc. 5 at ¶ 4. The motion argues that the last uncontested status—the *status quo ante*—is the moment prior to Petitioner's detention. *Id.* at 12-13. Petitioner also asks for a preliminary injunction hearing subsequent to this TRO to maintain his release pending final resolution of his habeas petition. *Id.* at 2.

On February 27, 2026, Respondents submitted a response to Petitioner's motion. Doc. 10. In it, the Government articulates its position that Petitioner is subject to mandatory detention under § 1225(b), pursuant to *Matter of Yajure Hurtado*. *Id.* at 2 (citing 29 I & N Dec. 216, 228 (BIA 2025)). Respondents acknowledge, however, that this Court has reached the opposite conclusion in cases containing substantially similar facts as those before the Court in this case. *Id.* (citing *Vega Uribe v. Noem*, 2026 WL 127621, at * 1 (D.N.M. Jan. 16, 2026); *Requejo Roman v. Castro et al.*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026)). The Government does point the Court to a non-binding case recently decided by the Fifth Circuit, which upheld the Government's position. *Id.*

2

(citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026)). The response does not address Petitioner's argument that he was entitled to a hearing before being re-detained.

## II.
## FACTUAL FINDINGS

Petitioner supported his Motion for TRO with the facts provided in his Petition, the motion itself, and Exhibits attached to the motion. *See* Docs. 2, 5. Respondents did not provide any information to dispute the factual allegations contained in the Petition and Motion. *See* Doc. 10 at 2. Accordingly, at this stage of the litigation, based on the facts provided in Petitioner's Petition and Motion for TRO, the Court makes the following initial findings of fact concerning Petitioner's detention:

1. Petitioner Sahil Sahil is a native and citizen of India. Doc. 2 at ¶ 17. He entered the United States without inspection on September 19, 2023. *Id.* at ¶ 59.

2. Petitioner was apprehended at some point after entering and was issued a Notice to Appear the next day. Doc. 5-2 at 5. He was charged as "an alien present in the United States who has not been admitted or paroled." *Id.*

3. On September 20, 2023, Petitioner was released on his own recognizance in accordance with 8 U.S.C. § 1226. *Id.* at 9.

4. After his release, Petitioner continued to report to ICE, Doc. 2 at ¶ 72, and he filed an application for asylum and withholding of removal, Doc. 5-2 at 11.

5. Over two years after his release, Petitioner was arrested by immigration officials, and he remains detained in Respondents' custody at this time. Doc. 2 at ¶¶ 68, 73.

## III.
## LEGAL STANDARD

A temporary restraining order "preserve[s] the status quo [ante]" before a final decision on the merits. *Resolution Trust Corp v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo ante is "the last peaceable uncontested status existing between the parties before the dispute developed." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (citation omitted).

To obtain a temporary restraining order, a petitioner "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest weigh in his favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A petitioner seeking a temporary restraining order must demonstrate that "*all four* of the equitable factors weigh in [his] favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). "The likelihood-of-success and irreparable-harm factors are 'the most critical.'" *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F.Supp.3d 1129, 1139 (10th Cir. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Regarding irreparable harm, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (quotation marks and citations omitted). The balance-of-equities and public-interest factors "merge" where, like here, the Government is the opposing party. *Nken*, 556 U.S. at 435.

## IV.
## DISCUSSION

**A. Petitioner is Likely to Succeed on the Merits.**

    1. <u>Procedural Due Process Claim</u>

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without first providing him with a pre-deprivation hearing. Doc. 2 at ¶ 57. Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

    a. <u>Petitioner Possesses a Protected Liberty Interest.</u>

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that there is a substantial likelihood that Petitioner will be able to show that he has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody over two years ago, was granted work authorization, and lived freely in the United States. Doc. 2 at ¶ 67.

This Court, and at least one other in this District, has found that noncitizens acquire a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, --F.Supp.3d--,

5

2025 WL 2941217, at *3 (D.N.M. 2025) (Urias, J.) (at TRO stage, finding petitioner released by ORR demonstrated a substantial likelihood of success on claim that he possesses a protected liberty interest in release from detention); *Cuya-Priale v. Castro*, 2025 WL 3564145, at * 2 (D.N.M. Dec. 12, 2025) (Gonzales, J.) (finding the same at the TRO stage for a petitioner released from detention to seek asylum). Neither Respondents nor the Court can identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest.

      b. <u>A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained.</u>

Having found that there is a substantial likelihood that Petitioner will be able to show a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Turning to the first *Mathews* factor, the Court finds there is a substantial likelihood that Petitioner can show that he has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As mentioned previously, Petitioner was out of immigration custody for over two years before being re-detained by ICE, during which time his interest in release grew even stronger as he worked and presumably

"form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. His private interest in freedom from detention is therefore substantial.

With respect to the second *Mathews* factor, the Court also finds that there is a substantial likelihood that Petitioner can show that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. *See* Doc. 5 at 5-7. As Petitioner suggests, *see id.* at 11, a pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds there is a substantial likelihood that Petitioner can show that the third *Mathews* factor favors him as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. And requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Moreover, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that there is a substantial likelihood that Petitioner, under the three *Mathews* factors, can show that he was entitled to a pre-deprivation hearing prior to being re-detained. Having found that there is a substantial likelihood that Petitioner can show a protected liberty interest, and that due process requires a pre-deprivation hearing, the Court finds that Petitioner has established a substantial likelihood of success on the merits of his procedural due process claim. This alone warrants relief, without needing to assess Petitioner's substantive due process claim or his INA claim.

**B. Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

The Court next finds that Petitioner has demonstrated that his detention has caused and will continue to cause irreparable harm. It is well-established that "the infringement of a constitutional right" is enough to show irreparable harm. *Free the Nipple-Fort Collins*, 916 F.3d at 805. Having found a substantial likelihood of success on the merits of Petitioner's due process claim, "no further showing of irreparable injury" is necessary. *Id.*

**C. The Balance of Equities and Public Interest Weigh in Petitioner's Favor.**

When the Government is the party opposing the temporary restraining order, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. The Court finds that the balance of equities and public interest weigh in Petitioner's favor here. Any burden on Respondents to release Petitioner from custody and provide a pre-deprivation hearing is minimal compared to the harm that Petitioner suffers due to his continued detention. It is also not in the public's interest to allow unexplained and/or unlawful detention.

## V.
## CONCLUSION

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. The Court also finds that the status quo ante is the position that Petitioner was in prior to his re-detention by ICE. Accordingly, **IT IS ORDERED** that:

1. Petitioner's request for a temporary restraining order is **GRANTED**;

2. Respondents are **ORDERED** to release Petitioner within twenty-four hours of this Order;

3. Respondents are **RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker;

4. The requirement that bond be posted is **WAIVED**;

5. The Court will consolidate the request for a preliminary injunction with consideration of the merits of the habeas petition pursuant to FED. R. CIV. P. 65(a)(2); and

6. This order, for good cause shown, shall remain in effect until resolution of the merits of the habeas petition. *See* FED. R. CIV. P. 65(b)(2).

**IT IS SO ORDERED.**

_____
**HONORABLE DAVID HERRERA URIAS**
**UNITED STATES DISTRICT JUDGE**